KING, HOLMES, PATERNO & SORIANO, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
SETH MILLER, ESQ., STATE BAR NO. 175130
SMILLER@KHPSLAW.COM
1900 AVENUE OF THE STARS, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE:  (310) 282-8903

Attorneys for Plaintiff SISYPHUS
TOURING, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SISYPHUS TOURING, INC., <br><br> Plaintiff, <br><br> vs. <br><br> TMZ PRODUCTIONS, INC., a California corporation; TMZ.com, a fictional entity of unknown form; EHM PRODUCTIONS, INC., a California corporation; WARNER BROS. ENTERTAINMENT, INC., a Delaware corporation; and DOES 1-10, inclusive, <br><br> Defendants. | CASE NO. 2:15-cv-09512-RSWL (PJWx) <br> Hon. Ronald S. W. Lew, Courtroom 21 <br><br> **NOTICE OF MOTION AND MOTION OF PLAINTIFF SISYPHUS TOURING, INC. FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JARED ROSENBERG; DECLARATION OF SETH MILLER** <br><br> Date:   August 16, 2016 <br> Time:   10:00 a.m. <br> Crtm:   21 <br><br> Action Commenced:  December 9, 2015 <br> Trial Date:          None |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on **Tuesday, August 16, 2016**, at **10:00 a.m.**, or as soon thereafter as the matter may be heard in Courtroom 21 of the above-entitled court, located at 312 North Spring Street, Los Angeles, California 90012, Plaintiff SISYPHUS TOURING, INC. ("Plaintiff") will and hereby does move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 in favor of Plaintiff and against Defendants MBLC PRODUCTIONS, INC., formerly called and sued as TMZ PRODUCTIONS, INC., TMZ.com, EHM

1   PRODUCTIONS, INC., and WARNER BROS. ENTERTAINMENT, INC.

2   ("Defendants") on the Fourth Defense (Fair Use) and Sixth Defense (First

3   Amendment) alleged in Defendants' First Amended Answer to Complaint (Doc. 21)

4   on the grounds there is no genuine dispute as to any material fact and Plaintiff is

5   entitled to judgment as a matter of law in favor of Plaintiff on the Fourth Defense

6   and Sixth Defense because Defendants' use of the video footage at issue is not a fair

7   use and is not protected by the First Amendment.

8        This motion is made following the conference of counsel pursuant to L.R. 7-3

9   which took place over multiple discussions and concluded on June 21, 2016.

10       The motion will be based on this Notice of Motion and Motion, the

11   accompanying Memorandum of Points and Authorities, the accompanying

12   Declarations of Jared Rosenberg and Seth Miller and exhibits thereto, including the

13   non-paper exhibits lodged with the Court, the Stipulated Facts for Summary

14   Judgment Motions (Doc. 40) filed on July 11, 2016, Plaintiff's Notice of Lodging

15   and exhibits thereto, and [Proposed] Order Granting Motion of Plaintiff Sisyphus

16   Touring, Inc. for Partial Summary Judgment filed concurrently, the Court's July 6,

17   2016 Order Regarding Summary Judgment Motions [38] (Doc. 39),  all matters of

18   which the Court may take judicial notice, the Court's files and records in this action,

19   and such other evidence, argument, or other matter as may be presented prior to or

20   at the hearing on the Motion.

21

22   DATED:  July 12, 2016                 KING, HOLMES, PATERNO &
                                            SORIANO, LLP
23

24

25                                         By: _____

26                                               HOWARD E. KING
                                                 SETH MILLER
27                                         Attorneys for Plaintiff SISYPHUS TOURING,

28                                         INC.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................... 1

II. ALLEGATIONS OF THE PLEADINGS ................................................ 2

III. UNDISPUTED MATERIAL FACTS ................................................... 3

IV. ARGUMENT ......................................................................................... 5

    A.    Standard for Granting Summary Judgment ..................................... 5

    B.    Fourth Defense – Fair Use ................................................................ 5

        1.    Legal Standard for Fair Use Defense ...................................... 5

        2.    Here, the statutory factors weigh against a finding of fair use ................................................................................................ 7

            (a)    Purpose and character of the use ..................................... 7

                **(i)**    The Taylor Swift Excerpt Is Not Transformative ................................................. 7

                **(ii)**    Defendants' Use of the Taylor Swift Excerpt Was Commercial ............................................. 8

                **(iii)**    The Taylor Swift Excerpt Is Not Protected as News Reporting ..................................... 9

            (b)    Nature of the copyrighted work ..................................... 11

            (c)    Amount and substantiality of the portion used in relation to the copyrighted work as a whole ................... 13

            (d)    Effect on the potential market for or value of the copyrighted work ............................................................ 15

            (e)    Defendants' bad faith precludes a fair use defense ......... 17

    C.    Sixth Defense – First Amendment ................................................. 18

V. CONCLUSION ..................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1995) ...................................................................................7

*Ford Motor Co. v. Titan Enter. Inc.*,
    2015 WL 9272814 (C.D. Cal. Dec. 18, 2015) ..................................5

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985) ..........................................................................passim

*Los Angeles News Service v. KCAL-TV Channel 9*,
    108 F.3d 1119 (9th Cir. 1997)..............................................6, 14, 17

*Los Angeles News Service v. Reuters Television Int'l, Ltd.*,
    149 F.3d 987 (9th Cir. 1998).........................................................6, 8

*Los Angeles News Service v. Tullo*,
    973 F.2d 791 (9th Cir. 1992).........................................6, 9, 14, 18

*Los Angeles Times v. Free Republic*,
    2000 WL 565200 (C.D. Cal. April 4, 2000) .........................passim

*Michaels v. Internet Entertainment Group, Inc.*,
    5 F.Supp.2d 823 (C.D. Cal. 1998)............................................15

*Monge v. Maya Magazines, Inc.*,
    688 F.3d 1164 (9th Cir. 2012)............................................passim

*Narell v. Freeman*,
    872 F.2d 907 (9th Cir. 1989) ......................................................6

*Religious Technology Center v. Netcom On-Line Comm. Services, Inc.*,
    923 F.Supp. 1231 (N.D. Cal. 1995) ............................................10

*Salinger v. Random House, Inc.*,
    811 F.2d 90 (2d Cir. 1997).........................................7, 12, 13, 16

## STATUTES

17 United States Code § 107 ....................................................................6, 7

Federal Rules of Civil Procedure, Rule 56...............................................5

KING, HOLMES,
PATERNO &
SORIANO, LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

This is an action for copyright infringement.  Plaintiff moves for partial summary judgment on Defendants' fair use and First Amendment defenses.

On December 7, 2015, Defendants posted on their TMZ.com website certain video footage taken at the home of musician and actor, Jared Leto.  Defendants obtained an unauthorized copy of the footage from Plaintiff's videographer without Plaintiff's prior knowledge or consent.  Plaintiff did not authorize—and indeed *objected in advance to*—Defendants' use of the footage on the TMZ.com website.

The footage shows Mr. Leto making comments about musician Taylor Swift that were confidential and had never been published.  The footage of Mr. Leto does not involve a matter of public concern or public interest.  The footage only has value to TMZ.com because Mr. Leto is a celebrity—the footage is not newsworthy.

Plaintiff owns the copyright in the Footage and alleges that Defendants' unauthorized use of the footage on TMZ.com infringes Plaintiff's copyright.

Defendants assert affirmative defenses of fair use and First Amendment.

Neither defense applies.  That Jared Leto is a celebrity does not make the footage a matter of public interest or concern.  There is no public interest in the footage that would support a fair use or First Amendment defense.  To the extent the footage contains any *facts* of legitimate public interest, the text article describing those facts also posted on TMZ.com is sufficient to convey the facts, and the use of the footage itself was gratuitous and served only to provide a commercial benefit to Defendants due to Mr. Leto's fame.  Defendants have no right to exploit the footage under the guise of fair use or of First Amendment protection for news reporting.

The material facts are not in dispute and are stipulated—*see* Stipulated Facts for Summary Judgment Motions (Doc. 40).  The Court should grant partial summary judgment in favor of Plaintiff on the fair use and First Amendment defenses.

## II.

## ALLEGATIONS OF THE PLEADINGS

Plaintiff[1] alleges that it owns the copyright in certain video footage of Jared Leto filmed at his home on or about September 8, 2015, by a videographer retained by Plaintiff.  Without Plaintiff's knowledge or consent, Defendants[2] obtained a copy of certain of the footage from Plaintiff's videographer and published it on the TMZ.com website on December 7, 2015, and have continued to publish it there ever since—notwithstanding prior notice from Plaintiff that the footage was stolen from Plaintiff, and that Defendants were not authorized to publish it on TMZ.com, or at all.  In publishing the footage on TMZ.com, Defendants willfully infringed Plaintiff's copyright in the footage.  (*See* Complaint [Doc. 1].)

Defendants allege *inter alia* affirmative defenses of fair use (Fourth Defense) and First Amendment (Sixth Defense).  (First Amended Answer [Doc 21], p. 8 of 9.)

Defendants filed a third party complaint against Plaintiff's videographer, Naeem Munaf ("Munaf"), alleging *inter alia* that, on December 4, 2015, Defendant EHM and Munaf entered into an agreement under which Munaf sold certain footage of Jared Leto to EHM "in exchange for compensation."  (First Amended Third-Party Complaint [Doc. 22], 3:20-21; *see also id*., ¶¶ 10-13, 20-23.)

On December 7, 2015, EHM published the footage of Jared Leto that it had obtained from Mr. Munaf on the TMZ.com website.  (Doc. 22, ¶ 14.) "Approximately fifteen minutes after" publication, Munaf advised EHM by email:

"'do not post the footage.  i do not own it.  i do  not have permission.'" (Doc. 22, 4:8-10. ¶ 15.)

/ / /

---

[1] Plaintiff Sisyphus Touring, Inc. ("Plaintiff").

[2] Defendants MBLC Productions, Inc., formerly called and sued as TMZ Productions, Inc., TMZ.com, EHM Productions, Inc. ("EHM"), and Warner Bros. Entertainment, Inc. (collectively, "Defendants").

**III.**

**UNDISPUTED MATERIAL FACTS**[3]

On December 7, 2015, an approximately one minute and ten second excerpt of footage of Jared Leto ("Taylor Swift Excerpt") shot by Mr. Munaf on September 8, 2015, was published on the TMZ.com website, along with an accompanying article written by TMZ staff commenting on the Taylor Swift Excerpt.  (Stipulated Facts for Summary Judgment Motions (Doc. 40) ["SF"], Fact 23; Plaintiff's Notice of Lodging ["PNOL"], Exh. 1; Declaration of Seth Miller ("Miller Decl"), Exh. A.)

The article accompanying the Taylor Swift Excerpt states, *inter alia*:

> JARED LETO
> SCREW TAYLOR SWIFT!!
> But I'd Love One of Her Hits

> Jared Leto did a full 180 on Taylor Swift in a matter of hours -- first, turning to her for musical inspiration, but ultimately deciding, "F*** her!"

> Leto and one of his Thirty Seconds To Mars bandmates were in an L.A. studio a couple of months ago trying to cook up some ideas for new music and thought Taylor was the perfect muse.  Let's face it, the chick makes hits.

> But here's why this video is amazing ... you see them listen to a bunch of 1989 tracks -- "Welcome to New York," "Blank Space" and "Style" -- and critique the music.  They really dig Taylor's 16 count.

> But frustration with capturing the Swifty sound eventually sets in, and Jared takes a shot ... we think at her music, not Taylor personally.

> We're guessing they're somewhere listening to Adele right now.

(SF, Fact 23, Miller Decl, Exh. A.)

---

[3] The material facts are stipulated to by the parties in their Stipulated Facts for Summary Judgment Motions (Doc. 40).  The relevant documents evidencing certain of those facts, to which the parties have stipulated, are attached to the accompanying Declaration of Seth Miller and/or are lodged with Plaintiff's Notice of Lodging.  *See* 07/06/2015 Order Regarding Summary Judgment Motions [38] (Doc. 39)

On December 7, 2015, Plaintiff registered a copyright in four excerpts of the video footage shot by Mr. Munaf on September 8, 2015, totaling approximately 12 minutes and 8 seconds of video, and deposited a copy of the footage with the United States Copyright Office ("Deposited Footage").  (SF, Fact 30;  PNOL, Exh. 2.)

The  Taylor Swift Excerpt has a total duration of approximately one minute and fourteen seconds, of which excerpts from the Copyright Footage comprise one minute and ten seconds.  The Taylor Swift Excerpt begins and ends with a two-second animation of the TMZ logo set to music.  The remainder of the Taylor Swift Excerpt consists of excerpts of the Deposited Footage to which TMZ added only the following: (1) the caption "Jared Leto: Screw Taylor Swift But I'd Love One of Her Songs: TMZ.com," which appears in the upper right hand corner of the video image when that corner of the image is selected by the viewer (*i.e.*, with a computer mouse); and (2) a TMZ logo in the upper right hand corner of the video image that appears for the duration of the Taylor Swift Excerpt.  (SF, Fact 32.)

The Deposited Footage has never been published in any form apart from the excerpts that comprise the Taylor Swift Excerpt published on TMZ.com.  The excerpts of the Deposited Footage that comprise the Taylor Swift Excerpt had never been published in any form prior to its publication on TMZ.com.  (SF, Fact 31.)

The Taylor Swift Excerpt has been published on TMZ.com at all times since December 7, 2015.  (SF, Fact 33.)

Prior to Defendants' publication of the Taylor Swift Excerpt on TMZ.com, Plaintiff notified Defendants that the Taylor Swift Excerpt had been stolen from Mr. Leto, that Plaintiff owned the copyright in the Taylor Swift Excerpt, and that Defendants were not authorized to use it.  (SF, Facts 19, 21;  Miller Decl, Exh. B.)

On December 7, 2015, fourteen minutes after the Taylor Swift Excerpt was posted on TMZ.com, Mr. Munaf contacted TMZ and demanded to TMZ: "do not post the footage.  i do not own it. i do not have permission.  i will not be signing any W-9 or agree to get paid forms."  (SF, Fact 34;  Miller Decl, Exh. C.)

1  A few hours later, Mr. Munaf repeated his demand to TMZ.com that TMZ

2  "REMOVE JARED LETO POST NOW. … I DID NOT OWN THAT FOOTAGE

3  NOR HAVE PERMISSION.  REMOVE NOW.  I AM NOT FILLING OUT ANY

4  W-9 OR AGREE TO GET PAID FORMS."  (SF, Fact 25;  Miller Decl, Exh. D.)

5  **IV.**

6  **ARGUMENT**

7  **A.**  **Standard for Granting Summary Judgment**

8  "A party may move for summary judgment, identifying each claim or defense

9  … on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  "The court shall

10  grant summary judgment if the movant shows that there is no genuine dispute as to

11  any material fact and the movant is entitled to judgment as a matter of law."  *Id.*

12  On an issue on which the non-moving party bears the burden of proof at trial,

13  the moving party can prevail "merely by pointing out that there is an absence of

14  evidence to support the nonmoving party's case."  *Los Angeles Times v. Free*

15  *Republic*, 2000 WL 565200 at *3 (C.D. Cal. April 4, 2000)(citing *Celotex Corp. v.*

16  *Catrett*, 477 U.S. 317, 323 (1986)).  "If the moving party meets its initial burden, the

17  nonmoving party must then set forth … 'specific facts showing that there is a

18  genuine issue for trial.'"  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

19  250 (1986).  On a plaintiff's motion for summary judgment, the defendant bears the

20  burden of proof with respect to its affirmative defenses.  *Ford Motor Co. v. Titan*

21  *Enter. Inc.,* 2015 WL 9272814, at *5 (C.D. Cal. Dec. 18, 2015)(citing *In re Oracle*

22  *Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010)).

23  **B.**  **Fourth Defense – Fair Use**

24  **1.**  **Legal Standard for Fair Use Defense**

25  "Because fair use is an affirmative defense to a claim of infringement,

26  defendants carry the burden of proof on the issue."  *Free Republic*, 2000 WL

27  565200 at *5 (citing cases); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170

28  (9th Cir. 2012)(same).  "This affirmative defense presumes that unauthorized

1   copying has occurred, and is instead aimed at whether the defendant's use was fair."

2   *Monge*, 688 F.2d at 1170.  Innocent intent is not a defense to liability.  *Id.*

3       The statutory doctrine of fair use allows for use of copyrighted material in a

4   reasonable manner without the copyright owner's consent.  *Los Angeles News*

5   *Service v. Tullo*, 973 F.2d 791, 795 (9th Cir. 1992).  The Copyright Act sets forth

6   four factors for a court to consider in determining whether a use is fair use:

7       (1) the purpose and character of the use, including whether such use
        is of a commercial nature or is for nonprofit educational purposes;

8

9       (2) the nature of the copyrighted work;

10      (3) the amount and substantiality of the portion used in relation to
        the copyrighted work as a whole; and

11      (4) the effect of the use upon the potential market for or value of the
        copyrighted work.

12

13   17 U.S.C. § 107.

14       These factors, while nonexclusive, are "'especially relevant'" in determining

15   fair use.  *Tullo*, 973 F.2d at 796 (citing *Harper & Row, Publisher, Inc. v. Nation*

16   *Enters.*, 471 U.S. 539, 560 (1985)).  "Fair use is a mixed question of law and fact

17   that may be resolved on summary judgment if a reasonable trier of fact could reach

18   only one conclusion."  *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989).

19       A number of Ninth Circuit cases have held that the unauthorized copying of a

20   plaintiff's video footage of newsworthy events is not fair use, even when the use is

21   in the context of the defendant's news reporting activities.  *See*, *e.g.*, *Tullo*, 973 F.2d

22   at 799 (news clipping service's copying and sale of television news programs

23   incorporating the plaintiff's video footage was not fair use);  *Los Angeles News*

24   *Service v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 994-995 (9th Cir.

25   1998)(affirming summary judgment for the plaintiff; holding that the defendant

26   television news agencies' unauthorized transmission of television news program

27   containing the plaintiff's raw news footage was not fair use); *Los Angeles News*

28   *Service v. KCAL-TV Channel 9*, 108 F.3d 1119, 1123 (9th Cir. 1997)(reversing

1   summary judgment for the defendant television station, holding that the station's

2   unauthorized broadcast of the plaintiff's video footage of the riots following the

3   Rodney King verdicts created a triable issue of fact as to fair use); *Los Angeles*

4   *Times v. Free Republic*, 2000 WL 565200 at * 21 (C.D. Cal. April 4, 2000)(granting

5   partial summary judgment for the plaintiff, holding that unauthorized copying and

6   posting of the plaintiff's news articles on the defendant's website was not fair use).

7        Unpublished works "normally enjoy complete protection against copying any

8   protected expression," and hence "'the scope of fair use is narrower with respect to

9   unpublished works.'"  *Salinger v. Random House, Inc.*, 811 F.2d 90, 97 (2d Cir.

10  1997)(citing and quoting *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471

11  U.S. 539, 564 (1985)).  There is a "diminished *likelihood* that copying will be fair

12  use when the copyrighted material is unpublished."  *Id.* (emphasis in original).

13       **2.     Here, the statutory factors weigh against a finding of fair use**

14            **(a)     Purpose and character of the use**

15                 **(i)     The Taylor Swift Excerpt Is Not Transformative**

16       The first fair use factor is "the purpose and character of the use, including

17  whether such use is of a commercial nature or is for nonprofit educational

18  purposes."  17 U.S.C. § 107.

19       The central purpose [of the first fair use factor] is to see … whether
        the new work merely "supersede[s] the objects" of the original
20       creation, … , or instead adds something new, with a further purpose
        or different character, altering the first with new expression,
21       meaning, or message; it asks, in other words, whether and to what
        extent the new work is "transformative."

22  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1995)(citing cases).

23       [W]hether "a substantial portion of the infringing work was copied
        verbatim" from the copyrighted work is a relevant question, … for it
24       may reveal a dearth of transformative character or purpose under the
        first factor, or a greater likelihood of market harm under the fourth; a
25       work composed primarily of an original, particularly its heart, with
        little added or changed, is more likely to be a merely superseding
26       use, fulfilling demand for the original.

27
28  *Campbell*, 510 U.S. at 587-88.

1   "'[T]he more transformative the new work, the less will be the significance of

2   other factors, like commercialism, that may weigh against a finding of fair use.'" *Id.*

3   A different purpose is not the same as transformation.  *Monge*, 688 F.3d at 1176.

4   Here, the Taylor Swift Excerpt consists of over one minute of verbatim

5   excerpts from the Deposited Footage, without any commentary or other content

6   (other than a TMZ logo and caption).  (SF, Fact 32.)  "There is little transformative

7   about copying the entirety or large portions of a work verbatim."  *Free Republic*,

8   2000 WL 565200 at *6 (citing numerous cases).  Other than adding a two-second

9   TMZ logo animation at the beginning and end of the Taylor Swift Excerpt, and

10  adding a TMZ logo in the corner of the video image, Defendants displayed excerpts

11  of the Copyright Footage verbatim.  (SF, Fact 32.)  The Ninth Circuit has made clear

12  that "[m]inor changes, such as placing 'voice-overs' on video clips, do not

13  'necessarily transform a work.'"  *Monge*, 688 F.3d at 1174 (citing cases).  "The

14  reasoning regarding voice-overs … applies with equal vigor to headlines and

15  captions over still images."  *Id*.  Here, Defendants did nothing to transform the

16  work.  They published verbatim excerpts of the Deposited Footage in the Taylor

17  Swift Excerpt.  They added their logo and nothing else.  (SF, Fact 32.)  The use of

18  the Taylor Swift Excerpt was not remotely transformative.

19          **(ii)**    Defendants' Use of the Taylor Swift Excerpt Was

20  Commercial

21          "The fact that a publication was commercial as opposed to nonprofit is a

22  separate factor that tends to weigh against a finding of fair use."  *Harper*, 471  U.S.

23  at 562.  "While a commercial use does not by itself preclude a defense of fair use,

24  'every commercial use of copyrighted material is presumptively an unfair

25  exploitation of the monopoly privilege that belongs to the owner of the copyright.'"

26  *Reuters*, 149 F.3d at 994 (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.,*

27  464 U.S. 417, 451 (1984)).  "The crux of the profit/nonprofit distinction is not

28  whether the sole motive of the use is monetary gain but whether the user stands to

1  profit from exploitation of the copyrighted material without paying the customary

2  price." *Harper*, 471 U.S. at 562.

3      Here, Defendants' purpose was "'unabashedly commercial.'" *Tullo*, 973 F.2d

4  at 797 (quoting *Pacific & S. Co.*, *Inc. v. Duncan*, 744 F.2d 1490, 1496 (11th Cir.

5  1984)).  TMZ.com is a for-profit, commercial celebrity news website, including that

6  it earns revenue from advertising.  (SF, Facts 8-9; *see also* Miller Decl, Exh. A

7  (reflecting advertising on TMZ.com on the page where the Taylor Swift Excerpt is

8  published).  By using the Taylor Swift Excerpt without permission, Defendants

9  stand to profit from its exploitation without paying the customary price.  Defendants

10  concede that there was a customary price because they offered to pay Mr. Munaf

11  $2,000.00 to use the Taylor Swift Excerpt on TMZ.com.  (SF Fact 12.)

12      Moreover, TMZ chose the most exploitative and sensational portions of the

13  Deposited Footage, where Jared Leto comments on the music of another celebrity

14  musical artist, Taylor Swift, and utters the words "f--k her"—but only in reference

15  to her musical choices in one of her songs—yet an epithet which TMZ edited to

16  make more shocking, and then paraphrased on TMZ.com as "SCREW TAYLOR

17  SWIFT!!"  (SF, Fact 23; Miller Decl, Exh. A.)  Defendants intended to generate

18  "clicks" and "eyeballs" to attract viewers—Defendants' intent was commercial.

19                          **(iii)**    The Taylor Swift Excerpt Is Not Protected as News

20  Reporting

21      "Purpose" in fair use analysis is not an all-or-nothing matter. The
    issue is not simply whether a challenged work serves one of the non-

22  exclusive purposes identified in section 107, such as comment or
    criticism, but whether it does so to an insignificant or a substantial

23  extent. The weight ascribed to the "purpose" factor involves a more
    refined assessment than the initial, fairly easy decision that a work

24  serves a purpose illustrated by the categories listed in section 107.

25  *Free Republic*, 2000 WL 565200 at *7 (citing *Twin Peaks Productions, Inc. v.*

26  *Publications Intern., Ltd.*, 896 F.2d 1366, 1375-76 (2d Cir. 1993)).

27      "Even where copying serves the 'criticism, comment and news reporting'

28  purposes highlighted in § 107, its extent cannot exceed what is necessary to the

1   purpose." *Free Republic*, 2000 WL 565200 at *8 (citing numerous cases).  "Rather,

2   the focus of the inquiry must be whether verbatim copying is necessary to

3   defendants' critical purpose."  *Id.* at *9.  "Commentary on news events requires only

4   recitation of the underlying facts, not verbatim repetition of another's creative

5   expression of those facts in a news article.  *Id.* at*10 (website's verbatim posting of

6   news articles was "'more than is necessary'" to further defendants' critical purpose);

7   *Religious Technology Center v. Netcom On-Line Comm. Services, Inc.*, 923 F.Supp.

8   1231, 1249 (N.D. Cal. 1995)("the percentage of plaintiffs' works copied combined

9   with the minimal added criticism or commentary negates a finding of fair use").

10   As the Ninth Circuit has held, "the [Supreme] Court [in *Harper*] did not give

11   a fair use free pass to news reporting on public figures, nor did it embrace the notion

12   that the unpublished nature of the work is without consequence."  *Monge*, 688 F.3d

13   at 1172.  "'Congress has not designed, and we see no warrant for judicially

14   imposing, a "compulsory license" permitting unfettered access to the unpublished

15   copyrighted expression of public figures.'"  *Id.* (quoting *Harper*, 471 U.S. at 560).

16   There is no general "newsworthiness" exception to infringement.  *Id.* at 1176.

17   Here, Plaintiff denies that the Taylor Swift Excerpt is newsworthy or involves

18   a matter of public concern or public interest.  The mere fact that Jared Leto is a

19   celebrity does not transform his casual comments about Taylor Swift's music made

20   in the private setting of his home into a matter of public interest or concern.  But

21   even if it were of public concern, the Taylor Swift Excerpt itself is far more than

22   was necessary to report on whatever alleged "matter of public concern" was

23   contained in Mr. Leto's comments about Taylor Swift.  To report on what Mr. Leto

24   said, all Defendants had to do was to summarize *in text* what he said—without any

25   video.  The TMZ.com webpage includes a text article summarizing  everything that

26   occurs in the Taylor Swift Excerpt.  (SF, Fact 23; Miller Decl., Exh. A).  The text

27   summary (*see id.*) reports all of the pertinent *facts* of what Mr. Leto says in the

28   accompanying Taylor Swift Excerpt.  That text article alone suffices for any alleged

1  news reporting purposes.  The use of over one minute of verbatim copying of the

2  Deposited Footage in the Taylor Swift Excerpt was unnecessary and is unprotected.

3  *Monge*, 688 F.3d at 1179 (gossip magazine "used far more than was necessary to

4  corroborate its story" in publishing stolen pictures of celebrity singer's wedding).

5  　　　　As the Supreme Court noted in *Harper*;

6  　　　　　　The Nation went beyond simply reporting uncopyrightable
   information and actively sought to exploit the headline value of its
7  　　　　　　infringement, making a "news event" out of its unauthorized first
   publication of a noted figure's copyrighted expression.

8

9  *Harper*, 471 U.S. at 561.

10  　　　　In *Monge*, the Ninth Circuit held that the defendants' publication in a gossip

11  magazine of previously unpublished photographs of the celebrity plaintiffs'

12  clandestine wedding "were not necessary" to prove the purported newsworthy fact

13  that the couple had kept their marriage a secret—"the marriage certificate, which is

14  a matter of public record, may have sufficed to inform the public that the couple

15  kept their marriage a secret for two years."  *Monge*, 688 F.3d at 1175.

16  　　　　Here, the same applies.  This factor weighs squarely against fair use.

17  　　　　　　**(b)　　Nature of the copyrighted work**

18  　　　　"The fact that a work is unpublished is a critical element of its 'nature.'"

19  *Harper*, 471 U.S. at 564 (quoting M. Nimmer, Copyright § 13.05[A] (1984)).

20  "Publication of an author's expression before he has authorized its dissemination

21  seriously infringes the author's right to decide when and whether it will be made

22  public, a factor not present in fair use of published works."  *Id*. at 551 (citing cases).

23  　　　　　　First publication is inherently different from other § 106 rights in
   that only one person can be the first publisher; … the commercial
24  　　　　　　value of the right lies primarily in exclusivity. Because the potential
   damage to the author from judicially enforced "sharing" of the first
25  　　　　　　publication right with unauthorized users of his manuscript is
   substantial, the balance of equities in evaluating such a claim of fair
26  　　　　　　use inevitably shifts.

27  *Id*. at 553.

28  / / /

1    In *Harper*, the Supreme Court "conclude[d] that the unpublished nature of a

2    work is '[a] key, though not necessarily determinative, factor' tending to negate a

3    defense of fair use." *Harper*, 471 U.S. at 554 (citing authorities).  Thus, "[u]nder

4    ordinary circumstances, the author's right to control the first public appearance of

5    his undisseminated expression will outweigh a claim of fair use." *Id.* at 555.

6    *Harper* involved *The Nation Magazine's* unauthorized publication of

7    verbatim quotes from President Ford's unpublished memoirs.  The district court

8    found that the use was infringing and awarded damages, and the court of appeal

9    reversed, finding the use was a fair use.  The Supreme Court reversed the court of

10   appeal and remanded, finding that the use was not a fair use.  *Id.* at 569.  In rejecting

11   *The Nation's* news reporting rationale for fair use, the Supreme Court commented:

> Respondents' theory, however, would expand fair use to effectively
> destroy any expectation of copyright protection in the work of a
> public figure. Absent such protection, there would be little incentive
> to create or profit in financing such memoirs, and the public would
> be denied an important source of significant historical information.
> The promise of copyright would be an empty one if it could be
> avoided merely by dubbing the infringement a fair use "news report"
> of the book.

17   *Harper*, 471 U.S. at 556.

18   "'The fair use doctrine is not a license for corporate theft, empowering a court

19   to ignore a copyright whenever it determines the underlying work contains material

20   of possible public importance.'" *Harper*, 471 U.S. at 558 (quoting *Iowa State

21   University Research Foundation, Inc. v. American Broadcasting Cos., Inc.,* 621 F.2d

22   57, 61 (2d Cir. 1980)).  "[W]e see no warrant for expanding the doctrine of fair use

23   to create what amounts to a public figure exception to copying." *Id.* at 560.

24   In *Salinger*, the Second Circuit, following *Harper,* held that "the tenor of the

25   [Supreme] Court's entire discussion of unpublished works [in *Harper*] conveys the

26   idea that such works normally enjoy *complete protection against copying any

27   protected expression*." *Salinger*, 811 F.2d at 97 (emphasis added).  In *Salinger*, the

28   Second Circuit reversed the district court's denial of a preliminary injunction based

1  on a finding of fair use.  The Second Circuit held that the defendants use of certain

2  unpublished letters of writer J.D. Salinger in a biography about the famous author

3  was not fair use.  *Id.* at 100.  Regarding effect on the market, the court held that "the

4  proper inquiry concerns the 'potential market' for the copyrighted work, *id.* at 99

5  (citing 17 U.S.C. § 107(4)), and that Salinger was "entitled to protect his

6  *opportunity* to sell his letters," *id.*, even though "since 1965 … [Salinger had]

7  "chosen to shun all publicity and inquiry concerning his private life," *id.* at 92.  As

8  the Second Circuit held:  "Salinger has the right to change his mind."  *Id.* at 99.

9       In *Monge*, the Ninth Circuit held that a gossip magazine's use of previously

10  unpublished photographs of a celebrity's clandestine wedding was not an

11  "'extraordinary circumstance'" and thus could not "overcome the presumption

12  against prepublication fair use."  *Monge*, 688 F.3d at 1178 (holding that "[w]e are

13  unable to discern anything extraordinary about the situation here, and agree with the

14  district court that Maya's 'publication undoubtedly supplanted Plaintiffs' right to

15  control the first public appearance of the photographs'" ).

16       This case is on all fours with *Monge*, *Harper*, and *Salinger*.  The Deposited

17  Footage, including the excerpts used by Defendants in the Taylor Swift Excerpt, was

18  *unpublished* on December 7, 2015, when Defendants published the Taylor Swift

19  Excerpt on the TMZ.com webpage.  (SF, Fact 31; *see also* Rosenberg Decl, ¶ 5.)

20  There is no "exceptional circumstance" here that would warrant publication of

21  previously unpublished video footage belonging to Plaintiff.  That Jared Leto is a

22  celebrity does not mean that video footage stolen from him can be published by

23  Defendants with impunity.  Plaintiff has a right to control any publication.  This

24  factor, given the unpublished Deposited Footage, weighs strongly against fair use.

25       **(c)     Amount and substantiality of the portion used in relation to**

26  **the copyrighted work as a whole**

27       "Copying even a small portion of a copyrighted work may exceed the

28  boundaries of fair use if the material taken is the 'heart' of the work."  *Tullo*, 973

1   F.2d at 798 (citing *Harper*, 471 U.S. at 564-65).  Here, the Copyright Footage is

2   approximately twelve minutes in duration.  The excerpts from the Deposited

3   Footage used in the Taylor Swift Excerpt are one minute and ten seconds in

4   duration.  (SF, Facts 23, 30.)  Defendants thus used about ten percent of the

5   Deposited Footage in the Taylor Swift Excerpt—not a "small portion"—and those

6   excerpts make up the entirety of the Taylor Swift Excerpt (other than the TMZ

7   logo).  *Harper*, 471 U.S. at 566 (finding that "the direct takings from the

8   unpublished manuscript constitute at least 13% of the infringing article")(holding

9   that the defendant magazine's use of verbatim excerpts from the plaintiff's

10  unpublished manuscript was not a fair use).[4]

11        Here, the portions used are the "heart" of the Deposited Footage and contain

12  some of the most compelling moments in the Copyright Footage.  *Tullo*, 973 F.2d at

13  798 ("Although [the defendant] copied only a small part of the raw footage shot by

14  [the plaintiff], it was the most valuable part of that footage")(finding that the third

15  fair use factor weighed against the defendant); *K-CAL TV*, 108 F.3d at 1122 ("While

16  a small amount of the entire Videotape was used, it was all that mattered"); *Monge*,

17  688 F.3d at 1178 ("[q]ualitatively, the minimal cropping of each picture

18  demonstrates that the 'heart' of each individual copyrighted picture was published").

19        Moreover, "the fact that a substantial portion of the infringing work was

20  copied verbatim is evidence of the qualitative value of the copied material, both to

21  the originator and to the plagiarist who seeks to profit from marketing someone

22  else's copyrighted expression."  (*Harper*, 471 U.S. at 565).  Here, the copying is

---

24  [4] Moreover, the Deposited Footage is raw (unedited) footage, shot in real time, and

25  hence contains considerable footage with little usable content.  (PNOL, Exh. 2.)

26  The Taylor Swift Excerpt contains more than ten percent of the *substantive*

27  Deposited Footage.  *Monge*, 688 F.3d at 1179 (proper comparison for amount of use

28  was the six pictures of the plaintiff's wedding and not the over four hundred pictures
    and three videos on the stolen memory chip acquired by the gossip magazine).

1  verbatim and comprised only of direct excerpts from the Deposited Footage.  The

2  portion used here was substantial.  This factor weighs against a finding of fair use.

3            **(d)**     **Effect on the potential market for or value of the copyrighted**

4  **work**

5        "[T]o negate fair use one need only show that if the challenged use 'should

6  become widespread, it would adversely affect the *potential* market for the

7  copyrighted work.' "  *Harper*, 471 U.S. at 568 (citing *Sony*, 464 U.S. at

8  451)(emphasis added in *Harper*).  "This inquiry must take account not only of harm

9  to the original but also of harm to the market for derivative works."  *Id*. (citing

10  authorities).  As the Supreme Court held in *Harper*:

> 11      Placed in a broader perspective, a fair use doctrine that permits
>     extensive prepublication quotations from an unreleased manuscript
> 12      without the copyright owner's consent poses substantial potential for
>     damage to the marketability of first serialization rights in general.
> 13      "Isolated instances of minor infringements, when multiplied many
>     times, become in the aggregate a major inroad on copyright that must
> 14      be prevented."

15  *Harper*, 471 U.S. at 568 (quoting S.Rep. No. 94–473, p. 65 (1975)).

16        Moreover, "a presumption of market harm 'makes common sense[ ] when a

17  commercial use amounts to mere duplication of the entirety of an original.'"

18  *Monge*, 688 F.3d at 1181 (quoting *Campbe*ll 510 U.S. at 591).  Here, Defendants

19  copied verbatim the heart of the Deposited Footage, *id.*, and in so doing destroyed

20  any market for the Taylor Swift Excerpt by exhibiting it online for the public to

21  view—for free—continuously since December 7, 2015.  Plaintiff denies that the

22  Taylor Swift Excerpt is a matter of public interest or concern, but to the extent it is

23  of any interest, Defendants have exploited any market value it had.  *Michaels v.*

24  *Internet Entertainment Group, Inc*., 5 F.Supp.2d 823, 836 (C.D. Cal. 1998)(display

25  or distribution on the internet of short segments of the plaintiffs' *unpublished*

26  videotape depicting them engaged in sexual intercourse "would destroy the

27  plaintiffs' exclusive rights in the work" and "therefore cannot constitute fair use").

28  / / /

1        That TMZ offered to pay a fee to Mr. Munaf for the purported right to use the

2   Taylor Swift Excerpt (SF, Fact 12) shows that TMZ knew that: (a) permission was

3   required to use the Taylor Swift Excerpt; and (b) the owner would need to be paid a

4   fee. *See Monge*, 688 F.3d at 1181 ("[the defendants'] purchase of the pictures

5   *unequivocally demonstrates* a market for the couple's copyrighted

6   pictures")(emphasis added).  The Deposited Footage clearly has market value.

7        Furthermore, the use by Defendants here supplants any use that Plaintiff may

8   one day have made of the Deposited Footage, including the Taylor Swift Excerpt

9   (*see* Rosenberg Decl, ¶ 4) *and* denies Plaintiff the right to never to use the Taylor

10  Swift Excerpt.  *Salinger*, 811 F.2d at 92.

11       In finding that there was no fair use in publishing the plaintiff's wedding

12  photographs purportedly to show that the plaintiff was married, *Monge* held:

13         "[T]o negate fair use one need only show that if the challenged use
    should become widespread, it would adversely affect the *potential*

14  market for the copyrighted work." … Unrestricted and widespread
    reproduction of Maya's conduct would not only undermine the

15  ability of celebrities to market images of themselves, but would also
    create incentives to pirate intellectual property.  In this case, "[t]here

16  is no analytical difference between destroying the market for a
    copyrighted work by producing and selling cheap copies and

17  destroying the subsequent years' market for a [work] by blowing its
    cover."

18

19  *Monge*, 688 F.3d at 1182 (citations omitted).

20       "We recognize that market harm may not be presumed in all instances;

21  however, the harm to both the potential and actual markets based on wholesale

22  copying of unpublished works demonstrates the logic of such a presumption in cases

23  'when a commercial use amounts to mere duplication of the entirety of an original.'"

24  *Monge*, 688 F.3d at 1183 (citing *Campbell*, 510 U.S. at 591).  The Ninth Circuit in

25  *Monge* reversed the trial court's denial of summary judgment and remanded,

26  holding that "the district court should have granted the [plaintiffs'] summary

27  judgment motion on this [fair use] issue."  *Id*. at 1184.  The Court should do so here.

28  / / /

1   The Deposited Footage is unpublished and has never been published other

2   than the excerpts Defendants published in the Taylor Swift Excerpt (Stmt, Fact 31)

3   and was intended as confidential, working material for *potential* use by Plaintiff

4   should it at some point desire to use the scenes of Mr. Leto working on his music for

5   promotional or "making of" documentary or other purposes.  (Rosenberg Decl, ¶ 4.)

6   Any market value the Taylor Swift Excerpt had was entirely misappropriated by

7   Defendants.  This fourth factor mitigates very strongly against a finding of fair use.

8   **(e)**     **Defendants' bad faith precludes a fair use defense**

9   In order to assert a fair use defense, the defendant must have acted in a

10  manner consistent with good faith and fair dealing.  *Monge*, 688 F.3d at 1173 n. 6

11  ("[i]n evaluating the 'purpose and character' factor, we apply 'the general rule that a

12  party claiming fair use must act in a manner generally compatible with principles of

13  good faith and fair dealing'")(citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d

14  1146, 1164 n. 8 (9th Circ. 2007)(and citing *Harper & Row*, 471 U.S. at 562-63)).

15  Here, Plaintiff advised Defendants prior to publication of the Taylor Swift

16  Excerpt that it had been stolen from Plaintiff, that Plaintiff owned the copyright, and

17  that Plaintiff did not authorize its publication on TMZ.com.  (SF, Facts 19, 21;

18  Miller Decl, Exh. B.)  Mr. Munaf, informed Defendants within minutes after the

19  Taylor Swift Excerpt was posted to TMZ.com that he had no authority to sell them

20  the Taylor Swift Excerpt, and that it should be removed.  (SF, Fact 24; Miller Decl,

21  Exh. C ("'do not post the footage.  i do not own it.  i do not have permission'").)

22  Mr. Munaf advised Defendants of the same facts a few hours later.  (SF, Fact 25;

23  Miller Decl, Exh. D ("REMOVE JARED LETO POST NOW.  … I DID NOT

24  OWN THAT FOOTAGE NOR HAVE PERMISSION").)  Defendants'

25  unauthorized use of a "purloined" work after receiving multiple notices to remove it,

26  including by Mr. Munaf, precludes any fair use.  *K-CAL TV*, 108 F.3d at 1122 (that

27  the defendant had requested a license and been refused one is not dispositive, but the

28  propriety of the defendant's conduct is relevant to the character of the use).

**C.** **Sixth Defense – First Amendment**

> Copyright law incorporates First Amendment goals by ensuring that copyright protection extends only to the forms in which ideas and information are expressed and not to the ideas and information themselves. "[T]he idea-expression dichotomy ... serves to accommodate the competing interests of copyright and the first amendment. The 'marketplace of ideas' is not limited by copyright because copyright is limited to protection of expression."

*Tullo*, 973 F.2d at 795 (citing cases).  "First Amendment concerns are also addressed in the copyright field through the "fair use" doctrine … ."  *Id.*

In *Tullo*, the Ninth Circuit found that the defendant's use of the plaintiff's news clips was not a fair use, *id.* at 799, and thus rejected the defendants' contention that the use was protected by the First Amendment, *id.* at 795.  Here, Defendants' use was not a fair use, as discussed above, and hence also is not protected by the First Amendment.  *Id.*  Defendants did not just use the idea expressed in the Deposited Footage but rather used significant portions of the Copyright Footage itself—the expression was copied, not just the idea.  *Id.*  Moreover, the text article on the TMZ.com website describes the pertinent content of the Taylor Swift Excerpt regarding Mr. Leto's comment about Taylor Swift.  (SF, Fact 23; Miller Decl, Exh. A at p. 1.)  Publicly displaying the Taylor Swift Excerpt was not necessary to report on what Jared Leto said about Taylor Swift in the Taylor Swift Excerpt (even assuming *arguendo* any of it was newsworthy).  Because Defendants' use of the Taylor Swift Excerpt is not a fair use, as discussed above, Defendants also are not protected from liability by the First Amendment.  *Tullo*, 973 F.2d at 795.  There is no "First Amendment" defense to infringement other than fair use.  *Id.*  Moreover, here, any allegedly newsworthy content in the Taylor Swift Excerpt could have been reported on without publishing the Taylor Swift Excerpt.  *Id.* (because the information contained in the clips used by the defendant already was publicly available, there was no possible concern about merger of idea and expression that would preclude public dialogue if the plaintiff's newsworthy work could not be distributed itself).

V.

## CONCLUSION

For the foregoing reasons, the Court should grant the Motion, should Order that partial summary judgment shall be entered in favor of Plaintiff and against Defendants on their Fourth Defense (Fair Use) and Sixth Defense (First Amendment) and that, at the time of final judgment, Plaintiff shall have judgment entered in its favor and against Defendants on the Fourth and Sixth Defenses, and the Court should grant such other or further relief as it deems just and proper.

DATED:  July 12, 2016

KING, HOLMES, PATERNO & SORIANO, LLP

By: _____

HOWARD E. KING
SETH MILLER
Attorneys for Plaintiff SISYPHUS TOURING, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2016, I electronically filed the foregoing **NOTICE OF MOTION AND MOTION OF PLAINTIFF SISYPHUS TOURING, INC. FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JARED ROSENBERG; DECLARATION OF SETH MILLER** with the Clerk of the Court by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Joey S. Gossett

Joey S. Gossett