1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20

| | |
|---|---|
| SISYPHUS TOURING, INC., | ) CV No. 15-09512-RSWL-PJW |
| Plaintiff, | ) |
| v. | ) **ORDER Re: DEFENDANTS'** |
| | ) **MOTION FOR SUMMARY** |
| | ) **JUDGMENT [47];** |
| TMZ PRODUCTIONS, INC., et al., | ) **PLAINTIFF'S MOTION FOR** |
| | ) **PARTIAL SUMMARY JUDGMENT** |
| | ) **[42]; DEFENDANTS' MOTION** |
| Defendants. | ) **PURSUANT TO RULE 56(d)** |
| | ) **TO DEFER CONSIDERATION** |
| | ) **OF PLAINTIFF'S MOTION** |
| | ) **FOR PARTIAL SUMMARY** |
| | ) **JUDGMENT [59];** |
| | ) **DEFENDANTS' MOTION FOR** |
| | ) **DEFAULT JUDGMENT [72]** |
| | ) |

21

### I.   INTRODUCTION

22

Currently before the Court is Defendant MBLC

23

Productions Inc. (formerly known as TMZ Productions,

24

Inc.), TMZ.com, EHM Productions, Inc., and Warner Bros.

25

Entertainment Inc.'s ("Defendants") Motion for Summary

26

Judgment ("Mot. Summ. J."), Plaintiff Sisyphus Touring,

27

Inc.'s ("Plaintiff") Motion for Partial Summary

28

Judgment ("Mot. Partial Summ. J."), Defendants' Motion

Pursuant to Rule 56(d) to Defer Consideration of Plaintiff's Motion for Partial Summary Judgment ("Mot."), and Defendants' Motion for Default Judgment Against Third-Party Defendant Naeem Munaf. The Court, having reviewed all papers and arguments submitted pertaining to this Motion, **NOW FINDS AND RULES AS FOLLOWS:** Defendants' Motion for Summary Judgment [42] is **GRANTED**, Plaintiff's Motion for Partial Summary Judgment [42] is **DENIED** as moot, Defendants' Motion Pursuant to Rule 56(d) to Defer Consideration of Plaintiff's Motion for Partial Summary Judgment [59] is **DENIED** as moot, and Defendants' Motion for Default Judgment against Third-Party Defendant Naeem Munaf [72] is **DENIED** as moot.

## II. BACKGROUND

### A. <u>Findings of Fact</u>

Plaintiff is a for-profit corporation co-owned by Jared Leto ("Leto"). Stipulated Facts 2:14-17. Leto is an actor, recording artist, and a member of the band Thirty Seconds to Mars. <u>Id.</u> at 2:18-19. MBLC Productions Inc. and EHM Productions, Inc. operate TMZ.com and are for-profit companies. <u>Id.</u> at 3:13-20. Warner Bros. Entertainment Inc. is the "indirect parent company" of MBLC Productions Inc. and EHM Productions, Inc. <u>Id.</u> at 3:15-16. TMZ.com reports on celebrity news through their website and earns revenue from advertisements on the website. <u>Id.</u> at 3:21-22.

Plaintiff's representative, Jared Rosenberg

("Rosenberg"), contacted Naeem Munaf ("Munaf") about shooting a video of Leto on September 8, 2015.  <u>Id.</u> at 2:20-22.  Munaf had no relationship with Plaintiff prior to September 8, 2015.  <u>Id.</u> at 2:23-25.  Munaf has never been an employee of Plaintiff.  <u>Id.</u> at 3:1-2. Munaf went to Leto's home on September 8, 2015 and shot footage of him.  <u>Id.</u> at 3:3-5.  Munaf used his own equipment and no one but Munaf operated his equipment during the video shoot.  <u>Id.</u> at 3:6-7.

Plaintiff did not give Munaf any documents prior to the shoot indicating that the work would be a work made for hire.  <u>Id.</u> at 3:8-12.  Munaf did not sign any agreements prior to the shoot indicating that the work would be a work made for hire.  <u>Id.</u>

Munaf, using a pseudonym, "Jake Miller" sent Defendants a message through "TMZ Ideas" on December 4, 2015 at 12:12 a.m. advising he had a clip of Leto talking about singer Taylor Swift.  <u>Id.</u> at 3:23-27.  A representative of Defendants, Anthony Dominic ("Dominic"), contacted Munaf about the excerpt.  <u>Id.</u> at 4:3-4.  A second representative of Defendants, Nikki Hendry ("Hendry"), contacted Munaf on December 4, 2015 at 1:17 p.m. stating, "[P}er our conversation, both parties have agreed that TMZ will pay you $2,000.00 USD for the outright purchase of 1 video of Jared Leto talking about Taylor Swift.  When you have a moment: can you please send me an email back stating 'I agree' to the terms of the agreement.  I have also attached

the contract and W-9 forms.  Please print and fill them
out and either fax, or scan and email back to me OR
take a good clear cell phone photo of the docs and
email them back to me.  A check will be sent to you in
the next 2-3 weeks." Id. at 4:5-14.  Munaf responded
to the email on December 4, 2015 at 1:20 p.m., stating
"I agree.  Sending video to Anthony.  I will send these
forms back soon." Id. at 4:18-20.

Munaf provided Defendants the weblink to the
excerpt on December 4, 2015 showing Leto talking about
Taylor Swift.  Id. at 5:1-3.  Hendry sent an email to
TMZ's news desk on December 4, 2015, with the subject
line, "[w]e now OWN and can distribute video of Jared
Leto talking about Taylor Swift." Id. at 5:4-8.
Defendants advised Leto's representatives on December
6, 2015 approximately at 4:00 p.m. that Defendants were
going to publish an excerpt of Leto talking about
Taylor Swift.  Id. at 5:9-11.  Leto and his
representatives told Defendants on December 6, 2015
that the video was stolen.  Id. at 5:15-16.  Rosenberg
contacted Munaf on December 6, 2015 at or after 10:47
p.m. asking he sign a non-disclosure agreement.  Id. at
5:17-18.  Leto's representative sent Defendants an
email on December 7, 2015 at 12:12 a.m. stating that
Leto owned the copyright to the video.  Id. at 5:23-25.
Munaf sent Plaintiff a scanned copy of the non-
disclosure agreement on December 7, 2015 at 12:15 a.m.
Id. at 5:27-28.  Defendants published one minute and

1  ten seconds of the video on TMZ.com on December 7, 2015

2  at 1:00 a.m. along with an article written by TMZ

3  staff. Id. at 5:5-7.

4      Munaf sent Dominic an email on December 7, 2015 at

5  1:14 a.m. stating, "do not post the footage. I do not

6  own it. I do not have permission. I will not be

7  signing any w-9 or agree to get paid forms." Id. at

8  6:19-21. Munaf sent Defendants a message on December

9  7, 2015 at 4:20 a.m. stating, "REMOVE JARED LETO POST

10  NOW. MY CONTACT AT TMZ IS ANTHONY DOMINIC. I DID NOT

11  OWN THAT FOOTAGE NOR HAVE PERMISSION. REMOVE NOW. I AM

12  NOT FILLING OUT ANY W-9 AGREE TO GET PAID FORMS." Id.

13  at 6:27-28; 7:1-3. Munaf did not return the contract

14  or W-9 form to Defendants and Defendants have not paid

15  Munaf any of the $2,000. Id. at 7:6-9.

16      Munaf sent Rosenberg an email on December 7, 2015

17  at 8:47 p.m. stating, "[a]fter agreeing to give TMZ the

18  footage for a financial gain of $2,000, I don't begin

19  to describe how guilty I felt and stressed from that

20  moment and that no amount of money would be worth the

21  humiliation that I know I have caused for jared and

22  you, JR...Whatever I thought my intent was, I did not

23  sign the agreement that TMZ provided nor fill out the

24  W-9, because after my decision I felt I could not agree

25  to take the money." Id. at 7:11-17.

26      Munaf signed a second non-disclosure agreement

27  provided by Rosenberg on December 7, 2015 at 11:16 a.m.

28  The agreement was "acknowledged and agreed as of this

date: 9/8/15, 2015." Id. at 7:21-24.  Munaf sent the
entire video he shot to Plaintiff on December 7, 2015.
Id. at 8:3-4.  On December 7, 2015, Plaintiff
registered four excerpts of the video with the United
States Copyright Office totaling twelve minutes and
eight seconds.  Id. at 8:5-8.  The excerpts contain the
footage that was published by Defendants.  Id. at 8:13-
14.  Besides being published by Defendants, no other
excerpts of the footage given to the Copyright Office
have been published.  Id. at 8:27.

The excerpt published by Defendants lasts one
minute and fourteen seconds.  Id. at 9:1-2.  There is
also an article and a caption in the upper left hand
corner of the excerpt image stating "Jared Leto: Screw
Taylor Swift But I'd Love One of Her Songs: TMZ.com."
Id. at 9:7-9.  The TMZ logo is in the upper right hand
corner of the excerpt image, and the excerpt begins and
ends with a two second animation of a TMZ logo with
music.  Id. at 9:11-14.  The excerpt and article were
published on December 7, 2015, and are still published
as of today.  Id. at 9:15-17.

**B.  Procedural Background**

On December 9, 2015, Plaintiff filed a Complaint
[1] alleging a claim of copyright infringement seeking
injunctive relief and damages in violation of 17 U.S.C.
§ 101.  On January 8, 2016, Defendants filed an answer
[21] to Plaintiff's Complaint alleging six affirmative

1  defenses.  On January 29, 2016, Defendants filed a
2  First Amended Answer [21].

3      On January 8, 2016, Defendants ("Third-Party
4  Plaintiffs") filed a Third-Party Complaint against
5  Third-Party Defendant "Jake Guy Miller" (Naeem Munaf)
6  [17].  On January 29, 2016, Third-Party Plaintiffs
7  filed a First Amended Third-Party Complaint against
8  Third-Party Defendant "Jake Guy Miller" [22].  On March
9  30, 2016, Third-Party Plaintiffs filed a Second Amended
10 Third-Party Complaint against Third-Party Defendant
11 Naeem Munaf [29].  On June 21, 2016, Third-Party
12 Plaintiffs filed an Application for the Clerk of the
13 Court to enter Default against Third-Party Defendant
14 Naeem Munaf [35].  On June 22, 2016, Default by the
15 Clerk was issued against Third-Party Defendant Naeem
16 Munaf [37].  On September 2, 2016, Third-Party
17 Plaintiffs filed a Motion for Default Judgment against
18 Third-Party Defendant Naeem Munaf [72].

19     On July 11, 2016, Defendants filed a Statement of
20 Stipulated Facts for Summary Judgment Motions [40].  On
21 July 12, 2016, Defendants filed the instant Motion for
22 Summary Judgment [47].  On July 26, 2016, Plaintiff
23 filed an Opposition [60].  On July 26, 2016, Plaintiff
24 filed a Statement of Genuine Disputes [61].  On August
25 9, 2016, Defendants filed a Reply [67].

26     On July 12, 2016, Plaintiff filed a Motion for
27 Partial Summary Judgment [42].  On July 26, 2016,

28                          7

Defendants filed an Opposition [56].  On August 2, 2016, Plaintiff filed a Reply [64].

On July 26, 2016, Defendants filed a Motion Pursuant to Rule 56(d) to Defer Consideration of Plaintiff's Motion for Partial Summary Judgment pursuant to Federal Rules of Civil Procedure 56(d) [59].  On August 2, 2016, Plaintiff filed its Opposition [65].  On August 9, 2016, Defendants filed its Reply [67].

### III. DISCUSSION

**A.   Legal Standard**

1.   Motion for Summary Judgment

Federal Rule of Civil Procedure 56 states that a "court shall grant summary judgment" when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine issue" exists if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the opposing party.  Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1328-29 (9th Cir. 1983).  In ruling on a motion for summary

judgment, the Court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists.  <u>Anderson</u>, 477 U.S. at 255.

Under Rule 56, the party moving for summary judgment has the initial burden to show "no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); <u>see</u> <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  The burden then shifts to the non-moving party to produce admissible evidence showing a triable issue of fact. <u>Nissan Fire & Marine Ins.</u>, 210 F.3d at 1102-03; <u>see</u> Fed. R. Civ. P. 56(a).  When a defendant moves for summary judgment, summary judgment "is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial."  <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 805-06 (1999); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

The standard for a motion for summary judgment "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgement; the requirement is that there be no *genuine* issues of *material* fact."  <u>Anderson</u>, 477 U.S. at 247-48.

///

9

**B.**   **Analysis**

    1.   <u>Plaintiff Does Not Own The Video As A Work</u>
       <u>Made For Hire</u>

A copyright "vests initially in the author or authors of the work."  17 U.S.C. § 201(a).  If a piece of work is a work made for hire, "the employer or other person for whom the work was prepared is considered the author..., unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."  17 U.S.C. § 201(b).  To qualify as a work made for hire, a work either needs to be "prepared by an employee within the scope of his or her employment; or a work specially ordered or commissioned for use as a contribution to a collective work...if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire."  17 U.S.C. § 101.

The video and excerpt is not a work made for hire under the first prong because Munaf has never been an employee of Plaintiff.  Stipulated Facts 2:23-25; 3:1-2.  For the video and excerpt to qualify as a work made for hire under the second prong, Plaintiff and Munaf would have needed to execute an express agreement signed in writing stating that the work is a work made for hire.  17 U.S.C. § 101.

The work must be specially commissioned "for use as a contribution to a collective work, as a part of a

motion picture or other audiovisual work, as a
translation, as a supplementary work, as a compilation,
as an instructional text, as a test, as answer material
for a test, or as an atlas." Id.  The video was
specially commissioned as an audiovisual work by
Plaintiff to be used as promotion of new songs by the
group Thirty Seconds to Mars.  Mot. Summ. J. Opp'n
7:16-18.

The determination of whether the video was a work
made for hire turns on the written instrument
requirement.  Plaintiff argues that Plaintiff and Munaf
orally agreed prior to the video shooting that
Plaintiff would own the copyright to the video.  Id. at
7:19-21.  The non-disclosure agreement confirmed their
prior oral agreement and satisfies the requirements of
17 U.S.C. § 101.  Id. at 10:2-6.  Defendants argue that
the written instrument must be created prior to the
creation of the work.  Mot. Summ. J. 2:3-5.  As the
non-disclosure agreements were signed nearly three
months after the video was shot, Defendants argue that
the video was not a work made for hire.  Id. at 2:11-
13.  The Ninth Circuit has yet to address in a
published opinion whether the written instrument needs
to be signed before the work is created or if a written
instrument memorializing a prior oral agreement is
satisfactory for purposes of 17 U.S.C. § 101.

1    The Seventh Circuit in <u>Schiller & Schmidt, Inc. v.</u>
2 <u>Nordisco Corp.</u>, 969 F.2d 410, 413 (7th Cir. 1992), held
3 that the writing instrument for a work made for hire
4 "must precede the creation of the property in order to
5 serve its purpose of identify the (noncreator) owner
6 unequivocally."  The court in <u>Schiller</u> held that the
7 statute's purpose is to "make the ownership of property
8 rights...clear and definite."  <u>Id.</u> at 412.  "Works
9 'specially ordered or commissioned' can only be made
10 after the execution of an express agreement between the
11 parties."  <u>Gladwell Gov't Servs., Inc. v. Cty. of</u>
12 <u>Marin</u>, 265 F. App'x 624, 626 (9th Cir. 2008) (holding
13 copyright ownership was not established through a work
14 made for hire agreement because the writing was not
15 executed before the work was created).

16    Additionally, the Central District of California
17 has followed the Seventh Circuit in ruling that a
18 writing must be executed  before the actual work is
19 created to qualify as a work made for hire.  <u>Andreas</u>
20 <u>Acarlsson Productions, AB v. Barnes</u>, 2012 WL 2366391,
21 (C.D. Cal. June 18, 2012) (holding one of the works
22 created by Defendant was not a work made for hire
23 because the written instrument distinguishing it as a
24 work made for hire was executed after the work was
25 created).

26    While other out-of-circuit courts have held that a
27 written instrument for a work made for hire may be

28                          12

executed after the work is created, it is clear based on the statute, the Seventh Circuit's decision in Schiller, and this district's ruling in Andreas Acarlsson, the intention is to have the written instrument executed before the work is made to clearly identify copyright ownership.  Allowing the writing instrument to be executed after the work is created would defeat the purpose of the statute in requiring a written instrument altogether.  There is no genuine dispute as to any material fact because the parties stipulated that Munaf was not an employee of Plaintiff, and Munaf did not sign any paperwork with Plaintiff prior to shooting the video on September 8, 2015 that the work would be a work made for hire.

There is a dispute as to whether there was an oral agreement between Munaf and Plaintiff before the video was shot that Plaintiff would be the owner of the copyright in the video.  As the written instrument for a work made for hire needs to be executed before the work is created, the issue of whether there was an oral agreement is irrelevant for purposes of this Motion for Summary Judgment.

    2.   <u>Plaintiff Does Not Own The Video As A Transfer</u>
        <u>From Munaf Because Munaf Transferred Copyright</u>
        <u>Ownership to Defendants on December 4, 2015</u>

To validly transfer copyright ownership, there must be "an instrument of conveyance, or a note or

13

memorandum of the transfer...in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204 (a). Defendants argue that Munaf transferred copyright ownership to them in their December 4, 2015 email exchange. Mot. Summ. J. 10:17-20. "Section 204's writing requirement is not unduly burdensome; it necessitates neither protracted negotiations nor substantial expense. The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be the Magna Charta; a one-line pro forma statement will do." Effects Associates, Inc. v. Cohen, 908 F.2d 555, 557 (9th Cir. 1990).

Munaf transferred copyright ownership to Defendants in their December 4, 2015 email exchange. Hendry, wrote that the agreement was for the "outright purchase" of the video for $2,000 and attached the contract and W-9 form. Olasa Decl., Ex. 1 at 4-9. Munaf emailed back stating he agreed to the terms of the agreement and sent the excerpt to a different representative of Defendants. "Under § 204(a), a transfer of copyright ownership has not occurred unless and until the copyright owner unambiguously embodies its intention to a signed writing." Weinstein Co. v. Smokewood Entm't Grp., LLC, 664 F. Supp. 2d 332, 343

1    (S.D.N.Y. 2009).   "No magic words must be included in a
2    document to satisfy 204(a). Rather, the parties' intent
3    as evidenced by the writing must demonstrate a transfer
4    of the copyright." Radio Television Espanola S.A. v.
5    New World Entm't, Ltd., 183 F.3d 922 (9th Cir. 1999)
6    (quoting Valente-Kritzer Video v. Pinckney, 881 F.2d
7    772, 775 (9th Cir. 1989)).

8        While the emails do not specifically say that
9    Munaf is transferring copyright ownership to
10   Defendants, it is clear from the finality of the
11   emails, Munaf's intention was to transfer ownership to
12   Defendants.   "In Schiller & Schmidt, 969 F.2d at 413,
13   the court held that an agreement, which did not include
14   the word "copyright," but whose "wording leaves little
15   doubt that [the alleged transferor] sold all the assets
16   of Spotline Studios, tangible and intangible alike" was
17   sufficient to constitute a transfer under Section
18   204(a)." Bieg v. Hovnanian Enterprises, Inc., 157 F.
19   Supp. 2d 475, 479-80 (E.D. Pa. 2001).   Munaf stated
20   that he "will send these forms back soon" evidencing he
21   was aware of the attached contract and W-9 form and its
22   content that Munaf was agreeing no other party had
23   interest in the excerpt and he was selling the
24   copyright to Defendants.   The actual writing in a
25   transfer of copyright does not have to explicitly state
26   that copyright ownership is being transferred, and
27   emails may be used to determine if there was a

28                              15

1   transfer.   See Schiller, 969 at 410; Kenbrooke Fabrics

2   v. Soho Fashions, 690 F.Supp. 298, 301 (S.D.N.Y. 1988).

3        As Munaf transferred copyright ownership to

4   Defendants on December 4, 2015, there was no transfer

5   to Plaintiff on December 6, 2015 when Munaf signed the

6   non-disclosure agreements.   Munaf no longer had

7   ownership in the excerpt.   Plaintiff's argument that

8   Munaf only transferred the actual video and not the

9   copyright is not persuasive because Plaintiff did not

10  put forth sufficient evidence showing that was the

11  understanding between Munaf and Defendants.

12       Plaintiff argues that the emails between Munaf and

13  Defendants were not a transfer because Munaf did not

14  sign it.   Mot. Summ. J. Opp'n 17:9.   15 U.S.C. § 7006

15  states that an electronic signature "means an

16  electronic sound, symbol, or process, attached to or

17  logically associated with a contract or other record

18  and executed or adopted by a person with the intent to

19  sign the record."   A signature or contract in

20  interstate commerce  "may not be denied legal effect,

21  validity, or enforceability solely" because it is in an

22  electronic form or has an electronic signature.   Id.

23       Plaintiff's argument here is not persuasive.   The

24  intent of the statute is to allow electronic forms as

25  valid agreements and signatures.   "To invalidate

26  copyright transfer agreements solely because they were

27  made electronically would thwart the clear

28                                16

1  congressional intent." _Metropolitan Regional_

2  _Information Systems, Inc. v. American Home Realty_

3  _Network, Inc._, 722 F.3d 591, 602 (4th Cir. 2013).  "An

4  electronic agreement may effect a valid transfer of

5  copyright interests under Section 204 of the Copyright

6  Act." _Id._ at 602.  While in _Metropolitan_ there was a

7  click of a "yes" button, here the emails are sufficient

8  to act as Munaf's signature.  Munaf, using the

9  pseudonym "Jake Miller," wrote via email to Hendry he

10 agreed to the terms of the agreement and the email was

11 signed "Jake Miller Freelace Artist".  Olasa Decl., Ex.

12 2 at 11.  While Munaf did not click a "yes" button,

13 Munaf did have to click the "send" button and the email

14 had "Jake Miller" written at the bottom, purporting to

15 be Munaf's signature.  The court in _Vergara Hermosilla_

16 _v. Coca-Cola Co._, No. 10-21418, 2011 WL 744098 (S.D.

17 Fla. Feb. 23, 2011) held that emails can be signed

18 writings and are sufficient to effect a transfer and

19 satisfy 17 U.S.C. § 204's writing requirement.  There

20 are no genuine disputes as to material facts because

21 Munaf transferred the excerpt to Defendants, not

22 Plaintiffs.

23      3.   _It Is Moot Whether Defendants Were Granted An_

24           _Irrevocable Implied License To Use The Excerpt_

25      The granting of a nonexclusive copyright license

26 does not have to be in writing.  _Foad Consulting Group,_

27 _Inc., v. Azzalino_, 270 F.3d 821 (9th Cir. 2001).  "A

28                              17

nonexclusive license copyright license may be granted orally or by implication." Id. at 826; Effects Associates, 908 F.2d at 558. State law must be used to determine if a nonexclusive copyright license has been granted. Id. at 827. Since the video was not a work made for hire and there was a valid transfer from Munaf to Defendants, the determination of whether an nonexclusive implied license was granted is moot.

### 4. Plaintiff's Motion for Partial Summary Judgment Is Moot

As Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff does not have any copyright ownership rights to the video and excerpt, Plaintiff's Motion for Partial Summary Judgment is **DENIED** as moot.

### 5. Defendants' Motion Pursuant to Rule 56(d) to Defer Consideration of Plaintiff's Motion for Partial Summary Judgment Is Moot

As Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff does not have any copyright ownership rights to the video and excerpt, Defendants' Motion Pursuant to Rule 56(d) To Defer Consideration of Plaintiff's Motion for Partial Summary Judgment is **DENIED** as moot.

### 6. Defendants' Motion for Default Judgment Against Third-Party Defendant Munaf Is Moot

As Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff does not have any copyright

18

ownership rights to the video and excerpt, Defendants'
Motion for Default Judgment against Third-Party
Defendant Munaf is **DENIED** as moot.

### IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendants' Motion
for Summary Judgment.  The Court **DENIES** Plaintiff's
Motion for Partial Summary Judgment as moot.  The Court
**DENIES** Defendants' Motion Pursuant to 56(d) to Defer
Consideration of Plaintiff's Motion for Partial Summary
Judgment as moot.  The Court **DENIES** Defendants' Motion
for Default Judgment against Third-Party Defendant
Munaf as moot.  The Third Party Complaint is dismissed.
All pending dates on the Court's calendar are VACATED.

The Clerk shall close this case.

**IT IS SO ORDERED.**


DATED: September 23, 2016     <u>s/ RONALD S.W. LEW</u>
                              **HONORABLE RONALD S.W. LEW**
                              Senior U.S. District Judge